(May 9, 1908.)

# VILLAGE OF SANDPOINT, Appellant, v. WILLIAM DOYLE, Respondent.

[95 Pac. 945.]

MUNICIPAL LAW—BRIDGES AND HIGHWAYS—RIGHT OF ABUTTING PROPERTY OWNERS—RIGHT OF INGRESS AND EGRESS.

1. Under section 850 of the Revised Statutes of this state, a bridge is a highway and subject to the laws applicable to highways.

2. Every property owner having a lot abutting on a street or highway has a special and peculiar right in that particular street or highway not common to other citizens, and such right is a property right appurtenant to his lot, and furnishes and affords him the means of getting to and from his property and thereby enjoying the common right of all the streets and highways in common with the community in general.

3. The owner of a lot abutting on a street or highway has the right of ingress and egress, and for the protection of such right has his cause of action, and for a municipality to prohibit and forbid him exercising his right to go to and from his property over and by way of such street, and to employ the means necessary to reach the street, would be to take his property without due process of law.

4. A municipality has a right to establish its grades and to fill in or bridge or plank its street and right of way so as to raise the surface to such grade, but by doing so it cannot preclude the abutting property owner from employing and using such reasonable means or making such reasonable improvements as may be necessary to enable him to go from his property to the street and exercise and enjoy the right of ingress and egress.

5. Where a municipality constructs a bridge 450 feet long across a small stream 25 feet wide and the adjacent ravine or depression in the natural surface of the ground, and such bridge is a height of 20 feet from the ground at the place where it passes an abutting property owner's lot: Held, that it is without the power and authority to unqualifiedly prohibit and deny the property owner the right to erect a platform on his own lot to such height as to enable him to go from his building to the bridge and to connect such platform with the bridge by proper and substantial railings, and by such means and in such manner exercise the right of ingress and egress.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for the County of Bonner. Hon. W. W. Woods, Judge.

Action by the plaintiff to enjoin and restrain defendant from constructing and maintaining a certain building and platform on his property adjacent to plaintiff's bridge. Judgment for defendant and plaintiff appeals. *Affirmed.*

John A. Steinlein, and Chas. L. Heitman, for Appellant.

A bridge is a highway. It is the duty of the municipality to keep in safe repair all bridges within its corporate limits. Any negligence in this regard by the municipality would render it liable for any damage that might be caused thereby. *(City of Topeka v. Hempstead,* 58 Kan. 328, 49 Pac. 87; *Mischke v. City of Seattle,* 26 Wash. 616, 67 Pac. 357.)

The use of a street, highway or bridge by an individual simply for his own convenience and accommodation, unaccompanied by public uses, is unauthorized, and essentially a nuisance, making not only the individual maintaining such nuisance liable, but the municipality also. *(Mischke v. City of Seattle, supra.)*

A municipality, charged with the duty of maintaining and keeping in repair streets and highways, cannot grant the use of any part thereof for private purposes. There is no such thing as a rightful, private, permanent use of public highways. *(State v. Berdetta,* 73 Ind. 185, 38 Am. Rep. 123.)

The bridge in question is joined at both ends by a street which is a public highway, and by the terms of our statute is 50 feet wide. The public is entitled to the entire width of the street, including the bridge, and any addition to the bridge that may become necessary by reason of increased traffic. (1 Addison on Torts, 328, sec. 313; 2 Dillon's Mun. Corp., sec. 780, note, and cases cited; *Giffen v. Lewiston,* 6 Ida. 231, 55 Pac. 545.)

The trial court did not see or hear any of the witnesses, and therefore the appellate court is in as favorable position for judging of the truth of the witnesses and the weight

of the evidence as the trial judge, and will consider the same as if originally heard in the appellate court. (*Roby v. Roby,* 10 Ida. 139, 77 Pac. 213.)

W. C. Jones, for Respondent.

Where the structure is in itself lawful and is being used in a lawful way, the municipality has no right whatever to interfere with its uses. (Wood on Nuisances, 2d ed., p. 803; *Brown v. Perkins,* 78 Mass. 89; *State v. Paul,* 5 R. I. 185.)

Every public bridge is a public highway, which all members of the community are entitled to use on equal terms, and all owners of abutting property are entitled to access to it as fully as they are entitled to access to any other part of the highway of which it constitutes a part. (Sec. 27, Elliott on Roads and Streets, 2d ed.; *State v. Wood Co.,* 72 Wis. 629, 40 N. W. 381; *Parker v. Boston & Maine R. R. Co.,* 3 Cush. 107, 50 Am. Dec. 709; *Commonwealth v. Cent. Bridge Co.,* 12 Cush. 242-244; *Rusch v. Davenport,* 6 Iowa, 443; *Washer v. Bullitt Co.,* 110 U. S. 558-564, 4 Sup. Ct. 249, 28 L. ed. 249; *Willis v. Winona,* 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142; *Waldron v. Marsh,* 5 Cal. 120.)

Every owner of property abutting upon a public highway has an absolute right of access to the highway, of which he cannot be deprived any more than he can be deprived of the abutting property itself, except by due process of law and on just compensation. (Elliott on Roads and Streets, 2d ed., secs. 695, 696; *Brakken v. Minneapolis etc. R. R. Co.,* 29 Minn. 41, 11 N. W. 124; *Cincinnati etc. Street Ry. Co. v. Cumminsville,* 14 Ohio St. 523; *Venard v. Cross,* 8 Kan. 255, 256; *Lostutter v. Aurora,* 126 Ind. 436, 26 N. E. 184, 12 L. R. A. 259; *Broome v. New York etc. Tel. Co.,* 42 N. J. Eq. 141, 7 Atl. 851.)

To prevent one erecting a lawful structure on his own land is a taking of property. (*Pumpelly v. Green Bay Co.,* 13 Wall. 166, 20 L. ed. 557.)

AILSHIE, C. J.—This action was originally commenced in 1903 by the village of Sandpoint against the defendant Doyle,

charging him with constructing a building for the purpose of running and conducting a saloon business and in cutting the rails of a certain bridge across Sand creek and connecting his building therewith. The plaintiff charged defendant with certain acts committed and others threatened which would amount to a nuisance, and asked that he be restrained and enjoined from the further commission of such acts. A demurrer was sustained to the complaint and an appeal was taken to this court, and the judgment of the lower court was reversed. (*Village of Sandpoint v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810.) The cause was remanded with direction to the lower court to overrule the demurrer and take such further proceedings as might be consistent with the views expressed in the opinion. The cause was tried in the district court and findings of fact and conclusions of law and judgment were made and entered in favor of the village and against the defendant, restraining and enjoining the defendant as prayed for in the complaint. The defendant prepared and served his statement and bill of exceptions and had the same settled, and thereupon moved for a new trial, and his motion was granted and a new trial was ordered. The case thereafter came on for a new trial and upon stipulation of the attorneys for the respective parties the case was submitted to the trial judge upon the evidence that had been taken on the previous trial and no witnesses testified upon the latter trial. The case was submitted and taken under advisement by the court and thereafter findings of fact and conclusions of law were made and filed and judgment was rendered and entered in favor of the defendant and against the plaintiff, and this appeal is from the judgment.

It is necessary to observe here that the first trial took place before the Hon. R. T. Morgan, who was then presiding judge of the first judicial district, and a new trial was granted by him. Before the case came on for a new trial, Hon. W. W. Woods succeeded to the office of judge of the first judicial district and accordingly tried the case on retrial. Judge Woods, therefore, did not see the witnesses or hear them

testify, and the entire case was made, so far as he was concerned, upon a paper record. Under such circumstances this court must examine the evidence and weigh the same in all respects as if the case had never been tried before, and will consider the evidence the same as if the case were being originally heard in this court. (*Roby v. Roby*, 10 Ida. 139, 77 Pac. 213; *Morrow v. Mathew*, 10 Ida. 433, 79 Pac. 196; *Stoneburner v. Stoneburner*, 11 Ida. 607, 83 Pac. 938; *Van Camp v. Emery*, 13 Ida. 202, 89 Pac. 752.)

It appears from the evidence that the bridge in question is about sixteen feet wide or 14½ in the clear, and that it crosses what is known as Sand creek, and that the street at each end of the bridge is 50 feet in width, and the street over which the bridge is erected is the street connecting Railroad street with First street in the village of Sandpoint. This bridge is 450 feet long and varies from a height of 27 feet at the deepest place in the canyon or stream down to a point at each side of the canyon at which the bridge meets the ground. It is a wooden bridge, with posts and handrails on each side to protect pedestrians, vehicles and animals from running or falling off the bridge. The stream is only about 25 feet wide, and at low water is only about 6 inches deep, but when the high waters come the stream is sometimes as much as 300 feet wide and 15 feet deep at the center of the stream. The defendant Doyle owns a lot situated within the depression or canyon between the main channel of the stream and the end of the bridge. The water seldom overflows his lot. The easement or right of way for a street in front of Doyle's lot appears to be 50 feet in width, but when plaintiff constructed its bridge it built the bridge on the side of the street next to Doyle's lot and immediately along and contiguous to the front of the lot, so that no space was left between the side of the bridge and the defendant's lot. This bridge has been constructed for some six or eight years. Doyle commenced the construction of his building, erecting it on substantial posts, well braced, and in doing so it became necessary for him to cut the railing on the side of the bridge next to his property. He constructed his building so as to

make the floor on a level with the bridge, setting the build-
ing back some 12 feet from the bridge. He constructed a safe
and substantial platform in front of his building and be-
tween the building and the bridge and placed posts and rails
around it so as to protect persons from falling off. The
rails placed around the platform appear to be as substantial
and safe in every respect as those placed around the bridge
by the village. Doyle appears to have erected this building
for the purpose of conducting a saloon, and so declared his
intention, and when he completed the same, opened up in the
saloon business. He ran the saloon, however, for only a
couple of hours, when he was arrested and fined for violating
the village ordinances. It appears that the village trustees
had duly and regularly passed and adopted an ordinance
prohibiting the sale or giving away of any liquors or intoxi-
cating drinks within 100 feet of this bridge, and it was for
violating this ordinance that Doyle was arrested and fined.
He appears, however, to have threatened to continue in the
saloon business at that place and to complete, equip and
maintain his building for that purpose, which was the cause
of this action being instituted against him. After leaving his
building idle for considerable time, he later opened up in the
dry-goods business, concluding, perhaps, that it would be a
more peaceful business and less offensive to the municipal
authorities, and perhaps less liable to invite the repeated
visits of the police authorities. He continued in the mer-
cantile business to the time of the trial of this case and made
no further attempt to conduct the saloon business, or any
other unlawful, prohibited or illegitimate business therein so
far as the record shows.

It is contended by the municipality that the decision of this
court on the previous appeal is the law of the case, and that
the judgment rendered and entered by the district court is in
conflict therewith. On the previous appeal, this court, speak-
ing through Chief Justice Stockslager, said: "We think the
village authorities have the power to permit or reject the
application of anyone to construct any kind of a building to
connect with this bridge. If it is by them considered in-

jurious to the traveling public, offensive to any class of
people who may have occasion to pass over the bridge, then
they may prohibit its construction.'' Upon a casual reading
of this language, it might be taken to indicate the view of
the court that the municipality could absolutely prohibit the
construction of any kind of a building, whether lawful within
itself or not, and whether intended for use in a lawful and
legitimate business or otherwise. In order to ascertain, how-
ever, the real purpose and intent of the court, it is necessary
to ascertain the exact question that was before the court and
that was then being discussed and considered by the court,
and out of the consideration of which the use of this language
arose. The question there being considered was the right of
Doyle to maintain a nuisance on his property adjacent to this
bridge, and particularly the power of a court of equity to re-
strain him from carrying on a business within a district
where the same was prohibited and forbidden by a municipal
ordinance and to maintain a nuisance on and adjacent to
this bridge. The court held that notwithstanding the right
of the municipality to have Doyle repeatedly arrested for
violating the ordinance, that it might also invoke the aid of a
court of equity to restrain him from maintaining the building
and offensive business at the place and in the manner it was
maintained, and wherein the offense and violation was being
repeatedly committed. The question was not before the court,
on that appeal, of the power of the municipal authorities to
absolutely prohibit the construction of any building whatever
at that place or the maintaining and carrying on of any law-
ful and legitimate business on the property in question. The
decision rendered by this court on the former appeal is un-
questionably the law of the case upon all matters that were
involved in, presented and passed upon on that appeal. It
determines the right of the municipality to restrain and en-
join the appellant in this case from maintaining a saloon
or conducting a saloon business on this property. Beyond
that, however, we do not think anything said in that opinion
can be treated as the law of the case.

At the trial of this case it appeared that the defendant and respondent had abandoned the saloon business more than three years previous to the trial, and had not been maintaining his place of business for that purpose, and that he had, on the contrary, maintained an orderly and legitimate business, and was at the time of the trial engaged in the mercantile business, using his property for that purpose. It was therefore unnecessary to issue a permanent restraining order against him enjoining him from carrying on or conducting the saloon business or maintaining a place for that purpose. The only question properly presented on this appeal for our determination is the power and authority of the municipality to absolutely forbid and prohibit the respondent from erecting and maintaining a building on his own lot, and erecting and maintaining the platform in front thereof so as to connect with the bridge and have access to and egress from his property over and by way of the bridge. In the first place we must remember that respondent's lot abuts on one of the streets and thoroughfares of the appellant corporation. It must also be borne in mind that the bridge along and over this street is a part of the street. In other words, a bridge is a highway. (Sec. 850, Rev. Stat.; Elliott on Roads and Streets, 2d ed., sec. 27.) If the village had not seen fit to construct this bridge across Sand creek and the ravine and depression through which it flows, but had rather preferred to leave the street as it previously was on the surface of the ground, there could be no question of the right of Doyle to construct his building, under proper regulations, and maintain the same on his lot and fronting on this street with all the necessary privileges of ingress and egress through and over the street. But the village saw fit to raise the surface of the street, which it might have done by a fill until it came to the main channel of the stream; or as it did do, by erecting posts and building a platform or bridge at the grade and level to which it desired to raise the surface of the street. Now, the village having seen fit to raise the surface of its easement and right of way for street purposes to an elevation of 20 feet in front of Doyle's property, has he not an equal right to raise his

building to the same elevation so as to preserve his right of ingress and egress? If he can do so, he is clearly within his legal rights. If he cannot, then the village by raising the grade of its street, through the guise and name of a bridge, may improve Doyle out of his property and all right of use and benefit thereof. This is certainly not justice, and we do not think it is the law. Every citizen has an equal right with every other to travel the streets of this municipality; but, on the contrary, every property owner having a lot abutting on a street or thoroughfare has a special and peculiar right in that particular street not common to the other citizens. That right is a property right appurtenant to his lot, and furnishes him the means of getting to and from his property and thereby enjoying the common right of all the streets with the balance of the citizens of the community. If he cannot get out from his property and has no means of ingress or egress, then the streets and thoroughfares of the municipality will be of no use to him, and consequently his property will be of but little benefit to him. While the public generally may have no special or particular interest in the right of ingress to any particular lot owner's property, the lot owner has a very material and special interest in having the public reach his property and place of business, and in his right to go and come and carry on business and invite the public to his place of business. It has been held by the courts that to cut off this right of ingress and egress would be to take the lot owner's property without due process of law. (*Transylvania University v. City of Lexington*, 3 B. Mon. (Ky.) 25, 38 Am. Dec. 173; *Story v. New York Elevated R. Co.*, 90 N. Y. 122, 43 Am. Rep. 146; *Adams v. Chicago etc. R. R. Co.*, 39 Minn. 286, 12 Am. St. Rep. 644, 39 N. W. 629, 1 L. R. A. 493; Elliott on Roads and Streets, 2d ed., sec. 695.)

In considering the general question of the right of ingress and egress and the property owner's right of action for damages on account of an obstruction thereof, the supreme court of Minnesota in *Brakken v. Minneapolis etc. R. R. Co.*, 29 Minn. 41, 11 N. W. 124, says:

"With reference to the other point it is well settled that the owner of lots abutting on a public street, whether he owns the soil to the center of the street or not, has a special interest in the street different from that of the general public. It may not be very important to the general public whether they shall be able to get to the private property of an individual, but it is important to the individual whether he should be able to get to and from his residence or business, and whether the public have the means of getting there for social or business purposes. If there be an obstruction in the street in front of or near his abutting property, so as to prevent access to it, the damage which he sustains is different, not merely in degree, but in kind, from that experienced in common with other citizens, and he may maintain a private action for the special injury to him, notwithstanding there is also a remedy in behalf of the public."

Likewise, the supreme court of Kansas in *Venard v. Cross,* 8 Kan. 255, says:

"But the petition goes further, and alleges that this highway is plaintiff's 'only means of ingress and egress' to his land. Obstructing such highway, therefore, prevents his access to his lands. Here is disclosed a particular injury to plaintiff, one differing not merely in degree, but also in kind, from that suffered by the community in general. It is not that he uses this highway more than others, but that the use is of a particular necessity to him, affording him an outlet to his farm. It is to him a use and a benefit differing from those enjoyed by the public at large. Obstructing the highway destroys that particular use and benefit. He therefore may maintain his individual action."

(See, also, *Cincinnati etc. Street Ry. Co. v. Cumminsville,* 14 Ohio St. 523; *Lostutter v. Aurora,* 126 Ind. 436, 26 N. E. 184, 12 L. R. A. 259; *Broome v. New York & N. J. Tel. Co.,* 42 N. J. Eq. 141, 7 Atl. 851.)

Considerable stress has been laid on the proposition that an abutting property owner has no right to interfere with or cut the rails of a bridge. That is a correct general principle of law; but it is founded upon the assumption that the

municipality, on its part, will not undertake to prevent the property owner's right of ingress and egress, and that it will so construct its bridges and maintain its street grades as to afford the property owner an equal right of erecting or constructing like or similar means on his property in order to enable him to get to and from the streets. If the municipality should build a bridge across another street, then clearly there would be no abutting property owner entitled to cut the rails of the bridge or interfere therewith, for the reason that it would be one highway across another and the public would be entitled to both easements and to maintain and protect the same. This would also be true if the municipality should build a bridge across a navigable stream; again we would have one highway over and across another, and the public would be entitled to maintain the easement and right of way and keep the same open and free to traffic. A very different principle of law arises, however, when the city raises its grade either by fill, a bridge or in any other manner through or over a depression in the natural surface of the ground and along adjoining and abutting properties. In such case, while the municipality may adopt reasonable rules and regulations with reference to the erection and maintenance of buildings and all approaches to the same, and entrance to and over the street, it cannot absolutely prohibit the property owner from using the street and enjoying his right of going and coming to and from his property through and over such street. In order to enjoy that right and privilege, he must be accorded an equal and concurrent right of using such means and methods on his own property as to enable him to get to the street and connect his property or place of business with the street or highway over which he must necessarily pass. It has been suggested that the bridge in question is not wide enough to accommodate the traveling public and also afford means of ingress and egress to abutting property owners. The question as to the extent of the duty and responsibility of the municipality in that respect does not arise in this case, for the reason that the village here constructed its bridge on the side of its right of way next to respondent's

property and caused the bridge to adjoin the front of respondent's lot. It therefore cut him off from his previous right of access to the street on its natural surface and left him without any means of egress and ingress at all, unless he can go over the bridge. Had his lot been on the other side of the street, and consequently 34 feet from the bridge, as are the other property owners on the farther side of the street, another and different question would then arise and call for our consideration. But since it does not arise in this case, we will not consider it.

We have examined all the evidence in this case and are satisfied that the village is not entitled to an injunction restraining the respondent from maintaining his building and place of business on his lot abutting on this bridge. We are also satisfied that he is entitled to egress and ingress over this bridge.

The judgment of the lower court must therefore be affirmed, and it is so ordered, with costs in favor of respondent.

Stewart, J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by my associates. While a bridge is a highway under our law, it seems to me that there is a clear distinction between the rights of land owners abutting on the streets of a town or city and the rights of land owners abutting on a bridge. Bridges necessarily require different and more careful protection from fire and other elements than the ordinary street, and most of the bridges of the state are only of sufficient width to permit vehicles to pass each other, and I do not think that the owners of property abutting on a bridge have that "special and peculiar right," referred to in the opinion of the majority, to the use of the bridge that abutting property land owners have on the ordinary street or highway.

In my view of the matter, the abutting land owners to a bridge have the same rights as the public to use such bridge, but they have no right to establish business houses along such

bridge, cut the railing thereof, connect their business houses with the bridge and conduct business therein.

The judgment of the lower court ought to be reversed.