390 P.2d 291

**A. A. JOHNSTON, Plaintiff-Appellant,**

**v.**

**BOISE CITY, a municipal corporation, Defendant-Respondent.**

No. 9277.

Supreme Court of Idaho.

March 12, 1964.

William A. Johnston, Boise, for appellant.

C. Stanley Skiles, Boise, for respondent.

**McFADDEN, Justice.**

Appellant Johnston, the owner of the two parcels of real property involved, instituted this action to enjoin respondent Boise City permanently, from proceeding with an order of the common council requiring the replacement of curb cuts adjacent to appellant's two parcels of land. The parcels involved, Lot 7, Block 23, (designated as the Bannock Street property), and Lot 2, Block 51, (designated as the Grove Street property), are in the Original Townsite of Boise City, and are owned by appellant.

The Bannock Street property is leased to the Colyear Motor Sales Company; it is a corner lot, occupying the southwest corner of Block 7, abuts Bannock Street on the south, and 11th Street on the west. From the curb cut in question, a driveway extends from Bannock Street across the sidewalk, to the property line.

The Grove Street property also is a corner lot being the northwest corner of Lot 2, Block 51, abutting Grove Street on the north, and Capitol Boulevard on the west. A part of this lot is leased to a business; the remaining portion, which is the only part in question in this action, is used for residential purposes.

On April 2, 1962, the Common Council ordered closure of designated curb cuts, and reconstruction of the curb. The effect of closing the curb cuts is to eliminate vehicular access from the street to the property. Pursuant to this order, notice was served on appellant to close the curb cuts within thirty days, otherwise the city would do so, at his expense. This notice was served on appellant by registered mail, but not served on either of the tenants of the respective properties.

At trial before the court, the manager of the Colyear Motor Sales Company testified that the Bannock street curb cut had not been used as a driveway since 1961, and that double doors opposite the curb cut were used only for pedestrian entrance and had not been used for vehicles to enter the building from the street for twelve years. It was also testified that on the Eleventh street side of the building there was another curb cut leading to double doors used for ingress and egress by motor vehicles from Eleventh street into the building. The building also had access for vehicular traffic from the alley in the block, but presently this entrance was not being used. In the center of the Bannock street curb cut a parking meter was maintained by the City. The record shows that vehicles had parked opposite this curb cut for many years.

A brick business building is situate on the north end of the Grove street property. Southerly therefrom is a house and a shed; next a vacant area opposite the Capitol Boulevard curb cut; and finally another house abutting on the alley. Due to the position of these buildings, and a building on the adjoining lot, there is no way to drive a motor vehicle onto the premises except over the curb cut. This curb cut and driveway is used for occasional fuel deliveries and removal of trash. The tenant of the house does not own an automobile. The curb cut fails to comply with the city specifi-

cations and is so abrupt that late model passenger automobiles cannot use it without dragging bottom. Fuel deliveries can be made from the street, and there is no necessity of a vehicle using the curb cut to remove trash.

The City supervisor of traffic safety testified that poorly placed driveways create parking and traffic problems, and since application for new curb cuts are constantly being granted it has been the policy of the city to close unused ones in order to meet demands for parking. He also stated that the Bannock street curb cut, although somewhat unsafe, was no more dangerous than others in the vicinity. He stated that the curb cut on Capitol Boulevard was so narrow that to enter the property a vehicle would have to make a 90° turn, requiring it to swing illegally into another lane of traffic.

The City Commissioner of public works testified that curb cuts require additional efforts in street cleaning, and the incline of driveways and curb cuts are hazardous in alighting from a car.

From this and other testimony, the trial court found that the accumulation of ice and water at such curb cuts constitutes a burden on the municipality in the maintenance of its public streets and ways; that such curb cuts constitute a burden to the municipality in its regulation of vehicular traffic and parking. The court further found that the action of the common coun-

cil in ordering closure of those curb cuts was a reasonable exercise of the police power of the City and did not constitute a taking of property. The court dismissed appellant's suit, and from the judgment entered, this appeal was taken.

Appellant asserts error in the trial court's determination that service of the notice on him alone complied with the requirement. Boise City Code § 14–803, which provides in part: "A notice of the contents of the order provided for in section 14–802 shall be served upon the owner, tenant, or occupant of the property adjoining the proposed improvement * * *" He contends that under this provision notice must be given to the lessee and occupants, as well as, and in addition to the owners of the adjoining property. He cites Boone v. District Court, 38 Idaho 688, 224 P. 429, as authority upholding his position. The Boone case involved the question whether certain published notices involved in confirmation of the organization of a drainage district complied with the requirements of C.S. §§ 4510 and 4511 (now I.C. §§ 42–2919 and 42–2920). Those sections require notice to be given to "all parties interested". The notice was addressed "to the land owners and * * * persons or corporations owning or interested in lands * * *." The court held that this phrase did not include "all parties interested" in the organization of the district nor to "all parties interested in hearing the report of the commissioners."

The language of the statute before the court in Boone v. District Court, supra, was inclusive; the language of the Boise City Code, § 14–803, now before us, requires notice "be served upon the owner, tenant or occupant." Other provisions of the Boise City Code, §§ 14–802 and 14–804 require that the name of the owner of the property to be set forth in the order, if known, and if not known, then the property be listed under the designation of "unknown owners." In case the affected property is unoccupied and the owner unknown, or if known, his address is unknown, the code makes provision for service of the notice by publication. In correlating these sections, it is our conclusion that Boise City Code § 14–803, requires service of the notice, personally or by registered mail upon the owner when both he and his address are known. Should personal service upon the owner be impossible by reason of either lack of knowledge of his address, or his name, then the alternative service upon the tenant or occupant is to be made. As thus construed the rights of the party basically affected will be protected under these provisions. Any other construction would fail to give the protection to the person primarily interested as contemplated by these provisions. There is no merit to this assignment of error.

The principal question to be resolved is whether the order of the common council

directing the closure of the curb cuts was a reasonable regulation under the City's police powers, or whether such closing order constituted a taking under the constitutional provisions pertaining to eminent domain, (Idaho Const. Art. 1, § 14) or deprivation of property without due process of law (Idaho Const. Art. 1, § 13).

This court has consistently held that access to a public way is one of the incidents of ownership of land bounding thereon. Such right is appurtenant to the land and is vested right. In Farris v. City of Twin Falls, 81 Idaho 583, 586, 347 P.2d 996, this court stated:

"Access to a public way is one of the incidents of ownership of land bounding thereon. Such right is appurtenant to the land and is a vested right of which the lot owner cannot be deprived without just compensation. (Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353)."

See also: Village of Sandpoint v. Doyle, 14 Idaho 749, 95 P. 945, 17 L.R.A.,N.S., 497; Independent School Dist. No. 1 of Twin Falls County v. Continental Oil Co., 49 Idaho 109, 286 P. 360; Hughes v. State, 80 Idaho 286, 328 P.2d 397; Mabe v. State, 83 Idaho 222, 360 P.2d 799; 10 McQuillin, Municipal Corporations, § 30.63, page 671, note 75 and supplement (3rd ed. 1950); 22 A.L.R. 942; 66 A.L.R. 1052; 73 A.L.R. 2d 652.

This right of access, however, may be regulated, for it is subservient to the primary rights of the public to the free use of the streets for travel and incidental purposes. Foster's Inc. v. Boise City, 63 Idaho 201, 212, 118 P.2d 721; Hickey v. Riley, 177 Or. 321, 162 P.2d 371, 375 (1945). Parking of vehicles is one of the uses of a street incidental to travel thereon. Without provisions for parking of vehicles, the right to the use of city streets for travel would unduly restrict the benefit of the public. Morris v. City of Salem, 179 Or. 666, 174 P.2d 192, 196 (1946). The legislature has by I.C. § 50–1141 delegated to the several municipalities of this state the authority, subject to constitutional limitations, to police the streets of the municipalities and to regulate traffic thereon. Fosters Inc. v. Boise City, supra.

This case presents the problem of reconciling the conflicting interests of the public with that of the abutting owner. Under its exercise of the police power and authority over the streets and in furtherance of the public good, the common council for sufficient reason, can eliminate these curb cuts and the driveways without incurring liability to the abutting owner for the resulting injury. On the other hand, if the order of the common council be characterized as a taking of property for a public purpose, the authority to make the order arises from the power of eminent domain,

under which the payment of just compensation is necessary. Smith v. State Highway Commission, 185 Kan. 445, 346 P.2d 259, 267 (1959).

It is unquestioned that upon payment of just compensation a right of access may be taken, but the problem presented here is not a question of taking under the authority of eminent domain with payment of compensation; the problem is simply whether the city may proceed in the closing of these curb cuts under its "police powers", regardless of payment of compensation. Appellant merely seeks a permanent injunction against the exercise of this power; he is not seeking damages.

The exercise of authority under the police powers may, in certain instances, have a harmful effect upon an individual or property owner, but that alone is insufficient to justify an action for injunctive relief or for damages. If the enactment authorizing the exercise of the authority bears a reasonable relationship to the public health, safety, morals or general welfare, such enactment would be valid within the inherent powers of the legislative body. White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778. Appellant does not question the constitutionality of the ordinance authorizing the action taken; all he questions is the reasonableness of its application. If the exercise of the authority under such an enactment is reasonable and not

arbitrary, any injury occasioned thereby must be considered a servitude inherent under our system of government, and damages from such injury must be considered as *damnum absque injuria*. Ex parte Pedrosian, 124 Cal.App. 692, 13 P.2d 389, 392 (1932); Lund v. St. Paul, M. & M. Ry. Co., 31 Wash. 286, 71 P. 1032, 1034, 61 L.R.A. 506 (1903); Adamec v. Post, 273 N.Y. 250, 7 N.E.2d 120, 109 A.L.R. 1110, 1116 (1937); Tenement House Department v. Moeschen, 179 N.Y. 325, 330, 72 N.E. 231, 232, 70 L.R.A. 704, 103 Am.St.Rep. 910, 1 Ann.Cas. 439 (1904); 16 C.J.S. Constitutional Law § 209a, p. 1058, at note 59. In the instances where exercise of the authority transgresses the bounds of reasonableness, or is arbitrary in result, to the point where there is an actual taking of private property for public use, (Idaho Const. Art. 1, § 14) or to the point where there is a deprivation of property without due process of law (Idaho Const. Art. 1, § 13), an action would lie for damages by way of inverse condemnation or for injunctive relief. The Supreme Court of Kansas in Smith v. State Highway Commission, 185 Kan. 445, 346 P.2d 259, 268, aptly expressed the obligation of the courts in dealing with a case involving a conflict between compensable damages for rights taken under eminent domain and non-compensable damages for injuries occasioned by exercise of the police power as follows:

"* * * Determination of whether damages are compensable under emi-

nent domain or noncompensable under the police power depends on the relative importance of the interests affected. The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy of the eminent domain clause of insuring the individual against an *unreasonable loss* occasioned by the exercise of governmental power."

As concerns the Bannock street premises, there exists access from the street to the premises for pedestrian traffic not only on Bannock street and Eleventh street, but also from the alley; vehicular traffic presently has access from Eleventh street and potentially from the alley. In Wood v. City of Richmond, 148 Va. 400, 138 S.E. 560 (1927), and in Town of Tilton v. Sharpe, 85 N.H. 138, 155 A. 44 (1931) it was held that, where the abutting owner had other means of access, the right of access may be denied by a police regulation. See also, Foster's Inc. v. Boise City, 63 Idaho 201, 212, 118 P.2d 721. The trial court found that this curb cut and driveway on Bannock Street have not been used for vehicular traffic for at least 12 years.

As concerns the Grove street property, the trial court found that the tenant of the property did not possess an automobile, that the existing curb cut did not conform to city specifications and is a steep grade; that the use of the curb cut is mainly for occasional delivery of fuel, and that fuel can be delivered from the streets by conveyors or other mechanical means. The findings of the trial court as to both the Bannock street and Grove street property are fully sustained by the record.

The trial court also found that accumulations of ice and water in driveways constitute a hazard to pedestrians and accumulation of rubbish, trash and debris constitutes a burden on the municipality in the maintenance of public streets and ways; that such curb cuts constitute a burden to the municipality in its regulation of motor vehicle traffic and parking. The findings in this regard likewise are sustained by the record.

Under the provisions of Boise City Code § 14–209, a permit from the council is first required before a curb cut may be made, such permit to be granted after application and consideration by the council. This section of the Boise City Code also provides that the city retains the right to order replacement of the curb at the expense of the adjacent property owner, and provides the procedure for such re-

**54**

placement. The granting or denial of a permit, and the issuance or denial of an order for replacement are all discretionary with the council; it is inherent that this discretion will be reasonably, not arbitrarily or capriciously, exercised. In the instant action no issue was presented as to the validity of Boise City Code § 14–209, nor was any contention advanced that the initial curb cuts were not made pursuant to permit. The present curb cut opposite the Grove street property does not comply with City's specification for curb cuts. The findings of the trial court to the effect that the curb cuts related to appellant's premises were not in fact being used and were unnecessary is fully sustained by the evidence. It is our conclusion the record discloses no unreasonable exercise of discretion and the conclusions of law and decree based on the findings of fact are correct.[1]

The final question presented by this appeal involves appellant's third specification of error to the effect that the trial court erred in entering judgment upon the findings of fact and conclusions of law within two days after they were served on appellant's counsel, instead of waiting for five days contemplated by Uniform Rules of the District Court, § 85, (1952). The record reflects that copies of proposed findings of fact, conclusions of law and decree were prepared by respondent's counsel and mailed to appellant's counsel on November 5, 1962; that the court signed the originals on November 8, 1962, prior to expiration of the five day period. The record further discloses objections to the proposed findings of fact and conclusions of law and decree were submitted by appellant's counsel on November 9, 1962. The court considered these objections, for on December 6, 1962, additional findings of fact were entered by the trial judge. By far the better practice is for a trial court to wait until objections have been heard or to wait the time provided by the rule, before entering the findings of fact, conclusions of law and decree; however, no prejudice to appellant is shown that would have changed the results.

Judgment and decree affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.

---

1. Prior to Sept. 1, 1961, Boise City was a special charter city. After Sept. 1, 1961, pursuant to S.L.1961, Ch. 51 such special charter was repealed and Boise City declared to be a city of the First Class subject to provisions of Title 50, Idaho Code, relating to cities of the first class, See: I.C. §§ 50–124, 50–143, 50–1101, 50–1104, 50–1105, 50–1121, 50–1123, 50–1141, as to authority over streets, cross-walks, curb, etc., of cities of the first class, and other cities and villages.