# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38344

STATE OF IDAHO, IDAHO
TRANSPORTATION BOARD,

    Plaintiff-Respondent,

v.

HI BOISE, LLC, a Delaware limited liability
company,

    Defendant-Appellant,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. a
Delaware corporation,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2012 Term

2012 Opinion No. 103

Filed:  June 29, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County.  Hon. Ronald J. Wilper, District Judge.

The judgment of the district court is <u>affirmed</u>.

Greener Burke Shoemaker, P.A., Boise, for appellant.  Thomas J. Lloyd argued.

Holland & Hart, LLP, Boise, for respondent.  Mary V. York argued.

---

J. JONES, Justice.

This appeal arises from a condemnation action brought by the State of Idaho, Idaho
Transportation Board (ITD) against HI Boise, LLC to acquire a strip of land as part of a project to
improve the I-84/Vista Avenue Interchange in Boise.  ITD offered HI Boise the condemned
property's appraised value of $38,177, but HI Boise filed a counterclaim for inverse condemnation,
claiming damages of $7.5 million for additional lost rights of access and visibility.  HI Boise now
appeals from the district court's summary dismissal of those claims.  Because we find that neither

1

claim involves a compensable taking, we affirm.

# I.
# FACTUAL AND PROCEDURAL HISTORY

This dispute was sparked by an ITD project known as the "Interstate 84/Vista Interchange Project." In response to increased traffic demands at the intersection of I-84 and Vista Avenue in Boise, ITD initiated the $30 million project to replace the existing interchange, add lanes to I-84, widen and lengthen on- and off-ramps to and from the Interstate, and widen and improve the Vista Avenue overpass extending across I-84. The interchange was replaced with a Single Point Urban Interchange (SPUI) with a single traffic light at the center controlling north-south traffic and converging on- and off-ramp traffic via protected left-hand turns in each direction. The project was completed in the fall of 2010.

HI Boise owns a 9.15-acre piece of real property located at the northeast corner of the I-84/Vista Avenue intersection, where it owned and operated a Holiday Inn during the proceeding below.[1] The main access to the property before the project was an approximately 40-foot wide, full-movement driveway[2] from Vista Avenue on the property's west edge. The property also has two full-movement driveways from Sunrise Rim Road along the north edge of the property, one of which it shares with a convenience store.

In order to widen and raise a section of Vista Avenue to meet the new overpass, ITD condemned a narrow strip along the west edge of the HI Boise property, on which it constructed a new bike lane and sidewalk. The strip of condemned property is approximately 7 feet wide and 133 feet long, totaling approximately 960 square feet.[3] The alterations to Vista also required ITD to alter HI Boise's main access from Vista. ITD constructed a new driveway in substantially the same location, moving the driveway's approach 2.055 feet south and 4.480 feet east and increasing its grade.[4] The width of the driveway was not changed by the reconstruction. Other than the alteration to the approach, the driveway remains in the same place it was before.

The Vista access was granted by ITD's predecessor in interest to HI Boise's predecessors in interest by two 1967 deeds, each reserving "access to Vista Avenue Northeasterly from Station 24+53.01 of said Vista Avenue Survey." HI Boise alleges that the specific location, dimension,

---

[1] According to HI Boise's briefing, the Holiday Inn franchise has since moved out of the property.
[2] A full-movement driveway allows unrestricted right and left turns into and out of the property.
[3] ITD points out that the condemned land equates to 0.24% of HI Boise's 398,574-square-foot property.
[4] One of the affidavits in support of HI Boise's position contrarily alleged that the approach was moved 7 feet east.

2

and size of the driveway was "apparently authorized and/or permitted by ITD's predecessor," but its only support for that assertion is the 1967 deeds. ITD asserts that a review of its records reveals no permit or evidence of the original location of the driveway when the original Vista Interchange and Holiday Inn were built in 1967. ITD's records also indicate that the driveway's location was moved at least one other time, in 1972, and that the road striping on Vista Avenue limited the driveway to right-in, right-out turns until the early 1990s.

It is undisputed that the alterations to the stretch of Vista Avenue bordering HI Boise's property did not involve adding lanes, medians, restrictive signals or signage, restrictive striping, or other traffic control measure. Before and after the project, Vista Avenue consisted of five lanes—two northbound, two southbound, and one center turn lane. In addition, it is undisputed that none of the driveways to the HI Boise property have been physically closed or affirmatively restricted by the project alterations, as all remain full-movement driveways. Following the project, the entirety of the Vista driveway remains northeasterly of Station 24+53.01, as provided in the 1967 deeds.

To complete the project, ITD also acquired two temporary construction easements on HI Boise's property—one 2,483-square-foot easement for reconstruction of the Vista driveway and one 3,136-square-foot easement for construction of a 20-foot sound wall. The sound wall was constructed entirely on ITD's right-of-way—not on HI Boise's property. HI Boise points to this and other aspects of the project that allegedly limit its property's visibility to passing motorists. In addition to the sound wall—which apparently blocks visibility of the hotel's billboard from the freeway—the project involved (1) reconfiguring the exit point for westbound traffic approximately 260 feet further east, thereby preventing motorists from seeing the hotel in time to exit at Vista Avenue; and (2) increasing the height of the overpass by as much as approximately 14 feet[5] and widening it, thereby decreasing visibility of two of the hotel's other signs. It is undisputed that none of these aspects of the project were constructed on HI Boise's property.

An MAI-certified appraiser determined the fair market value of the property taken and impacts on the remaining property to be $38,177, and ITD initially offered that amount to HI Boise. When negotiations were unsuccessful, ITD initiated this action on February 19, 2009, seeking condemnation. HI Boise counterclaimed for inverse condemnation and submitted a

---

[5] The record contains varying engineer measurements of the height increase to the overpass, the largest being around 14 feet.

3

business damages claim under I.C. § 7-711(2), estimating losses between $7.1 and $7.5 million. HI Boise alleged that in addition to the 960-square-foot strip of land, ITD also effectively condemned (1) its primary access to the property from Vista Avenue and (2) its ability to be seen by passing motorists. It also claimed damages for increased noise resulting from the project but later abandoned that claim. HI Boise's access claims were threefold. First, it argued that the movement of the Vista driveway from its original location constituted a taking of the access right reserved in the 1967 deeds. Second, it argued that the new driveway exceeded minimum grade standards, making it unsafe to accommodate busses, trucks, and emergency vehicles. Third, it argued that aspects of the overall project would produce backed-up traffic at the Vista driveway,[6] effectively restricting the driveway to a right-in/right-out access rather than a full-movement access and requiring motorists to use its other, more circuitous driveways (the circuity claim).

A bifurcated trial was set—a bench trial to determine the scope of the taking and a jury trial to determine HI Boise's damages. ITD made two motions for partial summary judgment, arguing that: (1) the slight movement of the driveway did not amount to a taking because the new driveway remains within the easement described by the 1967 deeds and HI Boise did not "perfect" its right to the driveway's specific location by obtaining a permit;[7] (2) the facts show that the new driveway meets all necessary safety requirements and, in fact, was approved by the City of Boise; and (3) a property owner does not have a compensable property right in continued patterns of traffic flow under Idaho law.

The district court denied summary judgment on the first two questions, finding genuine issues of fact whether HI Boise had somehow established a right to the driveway's location and whether the new driveway met safety requirements. However, the court granted summary judgment on the circuity claim, citing *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399

---

[6] HI Boise alleged, "Northbound traffic on Vista Avenue turning left onto Elder Street will exceed the capacity of the traffic control devices in place and the planned turn lanes, meaning that traffic will back up at the Vista/Elder intersection beyond HI Boise's access approach on Vista Avenue."

[7] The parties both cite another recent district court case, *State v. Bradley B., LLC and Dillon Limited Partnership*, No. CV OC 08185194 (Dec. 17, 2009), for this notion of perfection by permit. In that case, Dillon, the condemnee, had a similarly indefinitely-described right of access, reserving "access to Orchard Street Northerly from Station 6+05.64 of said Orchard Street Survey." The driveway constructed pursuant to that deed was removed by ITD and reconstructed 110 feet north, but still within the area described by the deed. Dillon claimed the reconstruction was a compensable taking, and Judge Deborah Bail agreed, finding that although the deed did not fix a specific location for the easement, it became fixed when ITD issued Dillon a permit to construct the driveway at that particular location. *See* 25 Am. Jur. 2d *Easements* § 72 ("Where the grant or reservation of an easement is general in its terms, an exercise of the right, with the acquiescence and consent of both parties in a particular course or manner, fixes the right and limits it to that particular course or manner."). We express no opinion on that holding.

4

(1976), for the proposition that damages due to mere changes in traffic flow to property—such as those caused by traffic control devices—are non-compensable. The court also granted summary judgment to ITD on HI Boise's visibility claim, finding no right to continued visibility of the property under Idaho law.

The district court denied HI Boise's motion for reconsideration on the circuity claim and, although it had reserved questions for trial, approved—and we granted—HI Boise's motion for permissive appeal of the circuity and visibility claims under I.R.C.P. 12 and issued judgments on those claims. HI Boise timely appealed.

## II.
## ISSUES ON APPEAL

I. Did the district court err in dismissing HI Boise's claim for increased circuity of travel?

II. Did the district court err in dismissing HI Boise's claim for diminished visibility?

## III.
## DISCUSSION

### A. Standard of Review

This Court reviews a grant of summary judgment pursuant to the same standards as the district court. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court reviews questions of law *de novo*. *Martin v. Camas County ex rel. Bd. of Comm'rs,* 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011). The issues of the nature of the property interest alleged to have been taken and whether a taking has occurred are questions of law. *Moon v. North Idaho Farmers Ass'n*, 140 Idaho 536, 542, 96 P.3d 637, 643 (2004).

### B. The district court correctly dismissed HI Boise's circuity claim because its right of access does not include a right to continued traffic flow under Idaho law.

HI Boise's circuity claim below was based on the allegation that the overall project would cause a "de facto median" due to backed-up traffic. Because of this, HI Boise alleged:

> The main entrance will become "right in/right out" only. Southbound traffic on Vista Avenue, which is the primary access for Boise-area meeting, convention and business traffic, will be disabled from turning left into the existing primary driveway fronting on Vista Avenue and will be required to either anticipate the

5

requirement of turning left on Sunrise Rim Road, and entering the Hotel site on one or two inferior and essentially "back door" curb-cuts, or will be required that southbound traffic to cross the 1-84 overpass and do a "U-turn" and come back to the Hotel.

Although the district court expressly reserved for trial the question of whether the physical reconstruction of the Vista driveway constituted a compensable taking, it held: "Based on *Bastian*, HI Boise's argument that the traffic flow on Vista which may make it difficult to turn left into or out of HI Boise is a compensable taking fails. The Court finds that HI Boise has reasonable access on Vista Avenue and on Sunrise Rim Road." On appeal, however, HI Boise still seems to focus on the driveway reconstruction, attempting to link its circuity claim to that "physical taking" as well as the taking of its 960-square-foot strip of land. HI Boise then asserts that *Bastian* is limited to "regulatory takings" cases, whereas this case of "physical taking" is governed by *State ex rel. Rich v. Fonburg*, 80 Idaho 269, 328 P.2d 60 (1958), which defines severance damages as "all inconveniences resulting to the owner's remaining land" from a partial taking. ITD points out that HI Boise misplaces its focus on appeal, that *Bastian* squarely applies to bar the circuity claim, and that the language cited in *Fonburg* is merely dicta that does not support HI Boise's case.[8]

The Idaho Constitution provides: "Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." Idaho Const. art. I, § 14. In a partial taking case, in addition to the value of the property right sought to be condemned, a court is also tasked with determining "the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned." I.C. § 7-711(2)(a). We have long held that access to an adjacent public way—even in the absence of an expressly deeded right—is one of the incidents of land ownership, the taking of which may require compensation. *Johnston v. Boise City*, 87 Idaho 44, 51, 390 P.2d 291, 294 (1964). However, "This right of access . . . may be regulated, for it is subservient to the

---

[8] Perhaps in response to HI Boise's focus on the driveway reconstruction to support its claim, ITD also spends a significant portion of its briefing arguing that HI Boise failed to demonstrate that it had perfected a property right in the particular location of the original driveway. Indeed, the 1967 deeds only provide a general area for the access easement, and HI Boise submitted no more than bare assertions at summary judgment that it had obtained a permit fixing a more specific location. HI Boise now emphasizes on appeal that the location was fixed by historical use, which is somewhat contrary to ITD's documentary evidence that the driveway had been moved at least once since its construction. Still, however tenuous HI Boise's position on this issue, it is not properly on appeal to this Court because summary judgment was denied and the district judge expressly reserved it for further fact finding at trial. *See Hunter v. State, Dep't of Corrections, Div. of Probation & Parole*, 138 Idaho 44, 47, 57 P.3d 755, 758 (2002) ("An order denying a motion for summary judgment is not an appealable order itself . . . .").

6

primary rights of the public to the free use of the streets for travel and incidental purposes." *Id.* Accordingly, not all government impairments of an access right are compensable. *State ex rel. Moore v. Bastian*, 97 Idaho 444, 447, 546 P.2d 399, 402 (1976). Specifically, no compensable taking occurs where the right is not destroyed or substantially impaired and the remaining access is reasonable. *Id.*; *Merritt v. State*, 113 Idaho 142, 145, 742 P.2d 397, 400 (1987). Further, we have held as a matter of law that a right of access "does not encompass a right to any particular pattern of traffic flow." *Brown v. City of Twin Falls*, 124 Idaho 39, 43, 855 P.2d 876, 880 (1993). Thus, state action that merely results in a change in traffic flow requiring traffic to reach property by a more circuitous route does not amount to a taking as a matter of law. *Id.* at 44, 855 P.2d at 881.

Here, HI Boise first argues that the district court applied the wrong standard to its circuity claim by analyzing it as a "regulatory taking" under *Bastian* rather than a "physical taking" under *Fonburg.* As indicated above, it bases its characterization of the taking as "physical" on the fact that ITD also took a strip of HI Boise's land for the project, as well as its argument that the driveway reconstruction constituted a physical taking. However, even assuming that the driveway reconstruction constitutes a physical taking—a question not before this Court—the district court was correct that *Bastian* squarely precludes compensation for changes in traffic patterns caused by other aspects of the project.

In *Bastian*'s familiar set of facts, the State condemned a portion of the defendant's physical property along two of its bordering streets as part of a project to widen and add lanes to the streets. 97 Idaho at 446, 546 P.2d at 401. In addition, the State constructed a raised center median on one of the streets, prohibiting motorists from turning left into and out of the defendants' former access point. *Id.* The median forced some motorists to drive "one-half to two blocks around the property" to access the property. *Id.* The trial court allowed the defendants to present evidence of damages caused by the median, but we reversed, holding:

> While it is true that defendants have a property interest in access to public streets . . . nevertheless not all impairments of that right by the State are compensable or per se unreasonable. That right of access does not encompass a right to any particular pattern of traffic flow or a right of direct access to or from both directions of traffic and we find no compensable impairment of access here. All who wish to reach defendants' property could do so with relatively minor inconvenience.

*Id.* at 447, 546 P.2d at 402. We also explained that the contemporaneous physical taking did not affect our analysis, stating:

7

The taking of defendants' property through the process of eminent domain and the consequent damage to the remaining property *had no necessary relationship* to the median construction. The placement of the medians and any consequent injury such might cause are the results of an exercise of the State's police power rather than a taking under its power of eminent domain.

*Id.* (emphasis added).[9]

We reaffirmed the *Bastian* rule in *Brown*, another case in which property owners sought compensation for newly constructed medians restricting their property's access point to right-in/right-out turns. *Brown*, 124 Idaho at 42–43, 855 P.2d at 879–80. Unlike *Bastian*, *Brown* did not involve a contemporaneous condemnation of physical property, but we still found it "indistinguishable" from *Bastian*, holding that the property owners did "not have a property right in the way traffic flows on the streets abutting their property." *Id.* at 43, 855 P.2d at 880. In deciding *Brown*, we also relied on *Merritt*, a case illustrating that this Court applies a similar rule whether the alleged taking of an access right appears to be physical or regulatory in nature. 113 Idaho at 145, 742 P.2d at 400. In *Merritt*, the alleged taking involved actual elimination of a curb cut, preventing access to the subject property at that point, as well as construction of a fence across an alley—another prior access point. *Id.* However, because the property owner still had direct access to his property via two other curb cuts and indirect access via the other entrance of the alley, the Court found:

> In the instant case, there having been no destruction of vehicular access to the Merritt property, and the remaining vehicular access being reasonable, there was no taking of the Merritt's property which would entitle him to compensation.
>
> \* \* \* \*
>
> The remaining opening to the alley might require a car that would have used the alley . . . to drive an extra block to reach the Freeport Street entrance to the Merritt property. However, the requirement of merely a more circuitous route to reach property is merely a by-product of regulation, and does not constitute a taking.

*Id.*

---

[9] For that proposition, the Court cited a similar Indiana Supreme Court case, *State v. Ensley*, which stated:

> The widening of the highway followed by its subsequent transformation into a highway with a divider strip in the center, though contemporaneous with and part of the same construction program, are separate improvements with respect to the appropriation of appellee's property.

164 N.E.2d 432, 349 (Ind. 1960).

8

Indeed, it is only where a previously existing access right is destroyed or at least substantially impaired, leaving no reasonable alternative, that we have recognized a compensable taking of access. *See Fonburg*, 80 Idaho at 280, 328 P.2d at 65–66; *State ex rel. Symms v. Nelson Sand & Gravel, Inc.*, 93 Idaho 574, 583, 468 P.2d 306, 315 (1970). In *Fonburg*, the State condemned 12.76 acres of Fonburg's land for construction of a new highway running from east to west and spanning the entire width of his land. *Id.* at 274, 328 P.2d at 61–62. The State also closed the old highway running along the west edge of Fonburg's property, where he had formerly enjoyed direct access, and denied him access to the new highway from his land. *Id.* This also prevented direct access to the railroad line running east to west through Fonburg's property just north of the new highway. *Id.* Although it is unclear from the opinion precisely what alternative access remained—and the Court mentions one "circuitous" route remaining to the railroad—it is clear that all access to the highway and reasonable access to the railroad were destroyed. *Id.* at 274–75, 328 P.2d at 61–62. Indeed, the district court in that case found, "There is also condemned and taken herein all rights of access to and from all properties abutting upon the above described parcel . . . and such rights of access, if any, existing heretofore are extinguished and the usage of any such access is hereby prohibited." *Id.* Based on this, we held that Fonburg was entitled to present evidence to the jury of damages arising from severance of those rights. *Id.* at 280, 328 P.2d at 65–66.

Contrary to HI Boise's claim in the present case, the distinguishing factor in *Fonburg* was not merely that a contemporaneous physical taking occurred, but that the taking also involved a near complete destruction of Fonburg's access rights. Further, the physical taking in that case *directly caused* the destruction of access rather than incidentally occurring alongside it. And finally, the *Fonburg* language on which HI Boise heavily relies—that severance damages include damages for "all inconveniences"—is simply a loose and somewhat misleading translation of I.C. § 7-711(2)(a). *Id.* at 278, 328 P.2d at 64.[10] Severance damages are only triggered upon a finding

---

[10] In all, we stated:

> Where a part of the owner's contiguous land is taken in a condemnation proceeding, all inconveniences resulting to the owner's remaining land, including an easement or access to a road or right of way formerly enjoyed, which decrease the value of the land retained by the owner, are elements of severance damage for which compensation should be paid.

*Id.*

9

as a matter of law that a property right—such as a right of access—has indeed been severed. *See Bastian*, 97 Idaho at 402, 546 P.2d at 447. Our jurisprudence—as demonstrated by *Bastian*, *Brown*, and *Merritt*—dictates that no severance occurs where the court finds as a matter of law that an access right has merely been regulated by an exercise of police power rather than taken by eminent domain. *Id.* Although HI Boise strenuously argues otherwise, *Fonburg* does not contradict nor alter that analysis.[11]

The only potential difference between this case and the *Bastian* line of cases cited above is in the fact that HI Boise has a deeded right of access to a specific area of Vista Avenue rather than the incidental right of access referred to in *Johnston* or some similarly undefined right. *Johnston*, 87 Idaho at 51, 390 P.2d at 294. However, although that may entitle HI Boise to the access described in the deeds, it does not bar the application of *Bastian* to preclude the circuity claim at issue here. While the deeds provide HI Boise access "to Vista Avenue," they do not specify a right to a full-movement driveway to Vista and, moreover, do not entitle HI Boise to any particular traffic flow *from* Vista. It is undisputed that no traffic control devices have been installed at the driveway's approach and that no lanes have been added or removed from Vista. It is also undisputed that motorists still have free access to and from the property via right-hand turns, and access to and from the property via left-hand turns has only been inhibited—if at all—by additional traffic resulting from other incidental traffic control aspects of the project. Under *Bastian*, such traffic control is merely an exercise of state police power rather than the substantial interference contemplated by *Fonburg* and *Nelson Sand & Gravel*. Indeed, the regulation in this case is even less restrictive than in *Bastian* and *Brown*, where actual medians—rather than the "de facto median" alleged here—were constructed.

Further, as in *Bastian*, although there was at least one physical property right—possession of the strip of land—contemporaneously taken in this case, the alleged circuity damages do not flow from that taking. Indeed, HI Boise does not even attempt to establish that causal connection.

---

[11] Other cases cited by HI Boise are similarly distinguishable. For example, in *Nelson Sand & Gravel*, construction of an interstate highway obstructed access between two parcels of land, requiring an extra four and a half miles of travel to access one from the other. 93 Idaho at 583, 468 P.2d at 315. We held: "Even though circuity of travel as distinct from a total destruction of access, may not be compensable, this court has held that substantial impairment of an access which decreases the market value of land remaining after condemnation is compensable." *Id.* (citing *Mabe v. State ex rel. Rich*, 83 Idaho 222, 360 P.2d 799 (1961) and *Fonburg*, 80 Idaho 269, 328 P.2d 60). Like *Fonburg*, *Nelson Sand & Gravel* involved more than a mere traffic diversion, but rather a four-and-a-half-mile "substantial impairment" of access constituting severance of a property right. *Id.* Further, the change in access was a direct result of the physical taking rather than an incident of some accompanying regulatory action. *Id.*

HI Boise merely argues on appeal that the reconstruction and slight movement of the driveway constituted a physical taking, but understandably does not argue that that slight movement itself somehow inhibited traffic flow. This fact, too, places the present case far from *Fonburg* and *Nelson Sand & Gravel,* where the physical takings themselves caused the limitation of access. Accordingly, even if it is ultimately determined that the reconstruction constitutes a taking, HI Boise's damages for that taking may not include the limitation of access to that driveway caused by changes in Vista traffic flow. The district court was correct in dismissing HI Boise's circuity claim as a matter of law.

> ## C.     The district court correctly dismissed HI Boise's visibility claim on summary judgment because it has no compensable property right in continued visibility under Idaho law.

HI Boise also sought severance damages for loss of visibility of its property by motorists on I-84, arguing that various aspects of the project—such as the sound wall, alterations to I-84 exits, and the widening and raising of the Vista overpass—have effectively left its property in a "hole." On summary judgment, the district court held:

> The existence of a "right of visibility" has not yet been expressly recognized as a property right in Idaho. Neither the legislature nor any Idaho cases have expressly recognized a compensable property interest in "visibility" or a right "to be seen" from a roadway. Nor have any Idaho cases held that "loss of visibility" from a roadway is compensable in direct or inverse condemnation proceedings.

The court also looked to other jurisdictions and was persuaded by significant case law rejecting such claims.

On appeal, HI Boise relies on out-of-state case law purportedly recognizing a right to continued visibility, as well as I.C. § 7-711(2) itself. At oral argument, HI Boise conceded that it could not base its visibility claim on the construction of the sound wall because that improvement was unrelated to the physical taking of its property. Still, it maintained its entitlement to damages for the changes to the Vista overpass and I-84 exits, arguing that the taking of its 960-square-foot strip of property was essential to completion of those improvements and the project as a whole. ITD responds that the Idaho case law on circuity supports a corresponding bar to visibility claims, out-of-state case law recognizing loss of visibility requires that the alleged obstructions be located on condemned property, and I.C. § 7-711(2) itself does not support a claim of damage for such loss.

Indeed, as ITD argues, neither the Legislature nor this Court has previously recognized a

11

right to continued visibility of property, and HI Boise offers no convincing argument that it should do so now. First, ITD is correct that the circuity case law discussed above is persuasive in this regard. If, as the *Bastian* line of cases dictates, a property owner does not have a property right in traffic flow around his property, it directly follows that he cannot assert a property right in that same traffic's ability to see his property. *See, e.g., Bastian*, 97 Idaho at 447, 546 P.2d at 402. As ITD points out, "Based on these principles, ITD could re-route Interstate 84 entirely so that no traffic went past the HI Boise property at all." This would certainly be permissible—assuming no access rights were unconstitutionally usurped in the process—and have the same effect on visibility as erecting the obstructions on which HI Boise now bases its claim.

There is significant support for this proposition in out-of-state case law. *E.g. Dep't of Transp. v. Marilyn Hickey Ministries*, 159 P.3d 111, 113 (Colo. 2007) ("We hold that because a landowner has no continued right to traffic passing its property, the landowner likewise has no right in the continued motorist visibility of its property."); *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993) ("Just as a landowner has no vested interest in the volume or route of passersby, he has no right to insist that his premises be visible to them."); *State ex rel. Missouri Hwy. & Transp. Comm'n v. Dooley*, 738 S.W.2d 457, 468–69 (Mo. App. 1987) (holding, in a partial takings case, that "any claim as to damages for 'public view' or visibility is 'inextricably related' to a property right in the traffic, [and] the decisions have consistently refused to 'accord to property owners any right in the continuation of traffic"). *See also* 4A Nichols on Eminent Domain § 14A.03[4] (Sackman & Van Brunt eds., 3d ed. Rev. 1997) ("Generally, this right is denied, principally upon the theory that one has no control over his neighbor's property and therefore could not prevent his neighbor, under most principles of real property law, from erecting barriers to prevent his right to be seen. Therefore a taking by a public authority takes nothing from him.")

While a few courts have approved severance damages for lost visibility, almost all refuse to do so when none of the alleged obstructions are actually constructed on the owner's condemned property. *E.g. State v. Weiswasser*, 693 A.2d 864, 873 (N.J. 1997) ("[L]oss of visibility as an element of severance damages may be related to a loss of access and the basis for the compensability for such damages would be whether the loss is attributable to the taking of the property itself or off-site conditions."); *People v. Wasserman*, 50 Cal. Rptr. 95, 105 (Cal. Ct. App. 1966) (Wasserman could not recover for alleged loss of visibility "since the improvement causing such loss of view[, t]he freeway itself, was not located on the property taken from these

12

defendants."). These cases turn on the fact that the lost visibility was a direct result of the severance of a legally cognizable property right—the physical property itself—rather than a severance of some stand-alone right to visibility. Idaho Code § 7-711(2)(a) provides a similar rule, allowing only "damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned."

Here, it is undisputed that none of the improvements alleged to obstruct visibility of the HI Boise property are located on its severed strip of land or on its allegedly condemned Vista driveway. Although at oral argument HI Boise attempted to link the alterations of the Vista overpass and exits to the taking of the 960-square-foot strip, any such link is too tenuous to satisfy Idaho Code § 7-711(2). Indeed, in conceding that it could not base its claim on the construction of the sound wall, HI Boise seems to recognize the statute's rule that the damage asserted must arise from the taking itself rather than other aspects of the project. Here, it does not. Because we do not recognize visibility as a compensable property right in and of itself and HI Boise has not demonstrated that any visibility was lost "by reason of" a compensable taking, I.C. § 7-711(2)(a) does not allow compensation for its lost visibility. Thus, the district court was correct in dismissing HI Boise's visibility claim as a matter of law.

## IV.
## CONCLUSION

In sum, the district court was correct that HI Boise's circuity and visibility claims do not involve compensable takings. Therefore, we affirm the district court's holdings. Costs to ITD.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.