396 P.2d 471

**H. C. LARSEN, Jr., Plaintiff-Respondent,**

v.

**VILLAGE OF LAVA HOT SPRINGS, Idaho, Defendant-Appellant.**

**No. 9499.**

Supreme Court of Idaho.

Oct. 30, 1964.

Rehearing Denied Nov. 23, 1964.

Merrill & Merrill, Pocatello, for appellant.

F. M. Bistline, Pocatello, for respondent.

Allan G. Shepard, Atty. Gen., and Michael Southcombe, Asst. Atty. Gen., amici curiae.

SMITH, Justice.

Defendant-appellant Village of Lava Hot Springs, a municipal corporation, is herein sometimes referred to as the Village.

Respondent seeks to enjoin the Village from constructing a lagoon type sewage stabilization plant in the near vicinity of respondent's real property which borders the Portneuf River to the south, about one mile west of the Village. This appeal resulted from a judgment and decree enjoining the Village from constructing the lagoon.

Respondent in his complaint alleges that the Village, unless enjoined, will construct the proposed open type of sewage disposal plant, upon a tract of land situate immediately adjacent to respondent's real property. He then alleges that he has erected upon his real property a 10-unit motel, costing some $65,000; that the land upon which the Village intends to construct the plant is subject to flooding from high waters of the Portneuf River; that the plant if constructed will create a health hazard to respondent, and particularly to occupants of the motel, beyond respondent's control, cause offensive odors and attract flies, mosquitos and other insects, and will cause prospective motel guests to forego staying there; also that it will cause a sharp drop in the market value of respondent's property, making it impossible for respondent to develop it further as a business area; that at the present time there is situate in the area, in addition to respondent's motel, a service station and two restaurants.

Respondent, by his prayer, seeks to enjoin the Village permanently from constructing the sewage disposal plant in such area.

The Village by its answer admitted that it intends to construct such an alleged lagoon type sewage disposal plant. The Village then alleged that the plan and type of plant which it intends to construct was approved by the State Board of Health and a public health engineer, and would be built under the supervision of a licensed engineer for the purpose of handling domestic sewage from the Village; that the lagoon would be located across the Portneuf River (southwesterly) some 300 feet distant from any of respondent's buildings.

The Village denied that the intended sewage disposal plant would create a health

hazard, and particularly to the occupants of respondent's motel. The Village further alleged that it intends to construct the plant in compliance with the request of the State Board of Health in order to prevent pollution of the waters of the Portneuf River and to protect the health of the inhabitants of the Village.

Issues having been joined, the trial court, at the conclusion of a trial without a jury, entered its findings of fact and conclusions of law, and a decree restraining the Village "from building an open sewage lagoon type disposal plant to serve the Village of Lava Hot Springs within 600 feet of the plaintiff's property line, used for picnic purposes." Appellant perfected an appeal from such decree. A brief statement of the facts follows.

Respondent purchased a tract of land in 1959 located on the Portneuf River one mile west of Lava Hot Springs. In 1960 he constructed a ten-unit motel and facilities to provide service to nine trailer houses; additionally, he provided picnic and camp ground facilities between the trailer installation and the river.

The Village discharges its raw sewage into the Portneuf River; because of resultant contamination of the river, Idaho's State Board of Health requested the Village to discontinue such practice and construct a sewage disposal system. After considering such request, the Village determined that the lagoon type sewage disposal plant would be the most feasible and economical structure for its purpose. Studies by the State Board of Health have determined that a lagoon area of approximately one acre is required for sewage disposal purposes to serve a population of 200 people.

The Village at its last census in 1960 had a population of 593. The Village contemplates an active lagoon type sewage disposal plant of approximately six acres, sufficient to accommodate a population growth of the Village to twice its present number. The Village contemplates a second lagoon of approximately two acres in area to be constructed beside the larger lagoon. The small lagoon would be activated and used only in the event the larger unit becomes insufficient to accommodate subsequent population growth.

Under the contemplated plan of disposal the sewage would be piped to the mid-area of the large lagoon containing three to four feet of water. The solids would be dispersed over the entire bottom area of the lagoon by wave movements of the water caused by the winds, with consequent high degree of dilution. Bacteria contained in the sewage, as well as in the soil, would feed upon and decompose the complex substances comprising the sewage, resulting in carbon dioxide, ammonia and other breakdown substances of organic material, including amino compounds. Decomposition

would take place under aerobic conditions (presence of oxygen) through atmospheric aeriation and re-acriation of the water due to wind action with resultant absorption of oxygen by the water; consequently no odors would be produced. The resulting water with high content of phosphorus, nitrogen, and carbon dioxide would be favorable to the growth of algae for consumption of the carbon dioxide and the amino compounds, and to the giving off of oxygen, thereby to maintain the water in a highly saturated condition as to its oxygen content, particularly during the spring, summer and fall months. Sunlight would also help to maintain the high level of oxygen in the water.

The United States Government has made funds available to small villages and communities for the purpose of aiding them in the construction of sewage disposal plants in order to eliminate pollution of streams. As a result of negotiations, the Government through the United States Department of Health, Education and Welfare, agreed to contribute $30,000 toward payment of the construction costs of the contemplated disposal plant. The Village then authorized the issuance and sale of $60,000 of its bonds, the proceeds to be used to pay the balance of the cost of the plant. Sale of the bonds has been deferred pending the outcome of the present action.

Plans were drawn and submitted to both the Health Departments of the State of Idaho and the United States; both approved the plans.

The lagoons, if constructed at the place intended, will be directly across the Portneuf River southwesterly from respondent's property. The smaller lagoon, which would not be used except if necessary, would be located approximately 300 feet from respondent's motel, and the larger, 650 feet from the motel. The Portneuf River is about 60 feet wide as it flows by respondent's property. The location of the picnic ground extending southerly from the trailer area to the river is not more definitely shown than between 75 and 200 feet distant from the smaller proposed lagoon. The distance from the larger active lagoon to the trailer park would be less than 300 feet.

Appellant by its various assignments contends that the trial court erred in finding that the intended construction of the lagoon type sewage disposal plant would constitute a health hazard to respondent and particularly to occupants of his motel property, the trailer park and users of the picnic grounds; cause offensive odors and the possibility of the presence of germ carrying insects; also in finding that the minimum safe distance of such a lagoon from respondent's property is 600 feet; and in finding that such contemplated structure would cause respond-

ent irreparable damage; also in entering its conclusions of law and decree.

The assignments of error raise the issue of insufficiency of the evidence to support the findings of the trial court. It therefore is necessary to review the evidence and to determine whether the trial court correctly applied the law.

A brief history of the lagoon type sewage disposal plants as shown by the record is deemed advisable. The first plant of this type was constructed in 1948 in North Dakota, and since that time communities in 39 states have used this method of sewage disposal. At the time of the trial of the case at bar there were 23 lagoon sewage disposal plants in the State of Idaho operated under the supervision of the State Board of Health. From December, 1956, to January, 1960, the Government of the United States made grants to 418 communities to aid in the construction of such sewage disposal plants.

Respondent testified that the prevailing winds in his area were from the proposed site of the lagoon toward his motel. He also stated that because of the contemplated construction of the lagoon across the Portneuf River from his property, he had been thwarted in his attempts to sell his motel property.

Respondent relies heavily upon the testimony of Alvin R. Anderson, a sanitary engineer employed by a private firm in Salt Lake City, Utah. He testified that there was a possibility, only, of offensive odors arising from such a lagoon during the springtime break-up of ice; that anaerobic conditions (absence of oxygen) occur when ice is sufficiently thick to prevent sunlight from activating the algae in the water, which reduces the oxygen content of the water; that certain bacteria which do not need a supply of oxygen operate during the iced-over period; that decomposition processes brought about by anaerobic bacteria create gases having foul odors; that when the spring thaw comes, the odors escape, although there is the possibility of no odors—at other times of the year there would be no odors if the disposal plant was properly constructed and maintained. He had personally observed only one such lagoon as regards odors—at Fort Duschesne Indian Agency in Utah—and was "very much interested in its operation", but admitted he had not evaluated it from a health standpoint.

Mr. Anderson entertained the opinion that a health hazard would exist due to the contamination to be found in such a lagoon; flies, mosquitos and birds can come in contact with the pond and transport viruses; the motel guests, the campers and the picnickers would be subject to this hazard. He asserted that even though the lagoon was properly constructed and maintained, there could be flies and mosquitos. He

cited epidemiological evidence compiled by the State Board of Health of Utah to the effect that in one Utah town an outbreak of hepatitis was generated by the close proximity of a pond of raw sewage in the immediate environment of some people. He concluded that such a lagoon should not be constructed within 600 feet of habitation.

Mr. Anderson's testimony, however, on cross-examination, assumed a negative aspect. Concerning an alleged health hazard, he testified that he did not know of any case where illness had been caused or traced to a sewage stabilization pond; and in the one instance of hepatitis in Utah, he stated that the evaluation pointed to a cesspool area of raw sewage in the immediate environs of the people affected. He admitted that such cesspool area "wasn't a controlled stabilization pond like this"— referring to the lagoon structure proposed to be constructed by the Village. He also admitted that he had never seen a bird infected by one of these controlled lagoons in Idaho; also it was questionable whether the bacteria present in the lagoons contribute to infection; and that he did not know whether flies, mosquitos and other insects, as regards these lagoons, presented any problem in Idaho. He had designed only two sewage lagoons, one in Wisconsin and the other in Minnesota, and had not observed either one in operation.

Mr. Anderson's entire testimony is conjectural as to whether the contemplated lagoon would emit odors, and then only during a period of the break-up of ice. Moreover his testimony to the effect that the controlled type of lagoons contemplated by the Village would constitute a health hazard, is grounded in hearsay and not upon experience.

The Village called as expert witnesses Howard L. Burkhart, Public Health Engineer, and Harlan Formo, Chief of Water Pollution Control, both of the Idaho State Board of Health. At the time of the trial herein they had under their jurisdiction, in their official capacities, 23 lagoons located in Idaho, of the same type as the one contemplated in the present proceeding. The type of lagoons are approved and recommended by both Idaho's State Board of Health and the Public Health Service of the United States. The witnesses had inspected those lagoons periodically; none had presented any health problem; none had given off any objectionable odors; they were not unsightly; people living in the close vicinity of the lagoons had never complained about objectionable odors, flies, mosquitos, or other insects. Only one complaint had been received concerning a lagoon near St. Anthony where odors had resulted from cheese whey which had reached the lagoon; such condition was duly remedied.

'Mr. Burkhart testified concerning the condition existing at the approximate time of the trial as to contamination of the Portneuf River, which borders and flows by respondent's property, which condition is intended to be remedied by construction of the contemplated sewage disposal plant. He stated that the raw sewage from the Village dumped into the river causes it to be very heavily contaminated, and thus creates a health problem; that people, including respondent's customers, should not fish in the river, nor enter it for any reason unless they wash well afterwards because of the contamination of its waters; and while respondent has not fenced his property along the river, it should be fenced to prevent anyone in that area from entering the river.

Appellant's witness, Leslie H. Ballif, the licensed civil engineer who chose the proposed site for the sewage disposal plant, testified that he had explored the canyon below the Village to ascertain where the lagoons should be located; that he considered construction problems which might arise and the ability of the Village to pay for the lagoons; and that after his investigation he concluded that the selected location was the only one in the area practicable and economically feasible.

I.C. § 52–101 defines a nuisance as follows:

"Anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, stream, canal, or basin, or any public park, square, street or highway, is a nuisance."

The Village, a municipal corporation, possesses the legislatively delegated power to construct, operate and maintain sewage disposal facilities, I.C. § 50–905; and to issue its bonds for the purpose of acquiring and constructing sewage treatment and disposal plants, together with the necessary lands and appurtenances. I.C. §§ 50–2814 and 50–2815.

Nothing which is legal in its inception is a nuisance per se. To be a nuisance per se, it must appear that it is a nuisance at all times under all circumstances, regardless of location and surroundings. City of Marlin v. Criswell, Tex.Civ.App., 293 S.W. 910 (1927). The location and the manner of operation of a sewage disposal plant will determine whether it is a nuisance in fact. City of Lakeland v. State ex rel. Harris, Fla., 197 So. 470, 472 (1940); Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695 (1950).

An injunction may issue to restrain a threatened or anticipated nuisance when it clearly appears that a nuisance will

necessarily result from the contemplated act or thing sought to be enjoined. 39 Am. Jur., Nuisances, § 152; Wergin v. Voss, 179 Wis. 603, 192 N.W. 51, 26 A.L.R. 933 (1923); Otto Seidner, Inc. v. Ralston-Purina Co., 67 R.I. 436, 24 A.2d 902 (1942); City of Lynchburg v. Peters, 145 Va. 1, 133 S.E. 674 (1926). In order to obtain an injunction against, or the abatement of, an alleged nuisance, the complaining party must show a clear case supporting his right to relief. City of Marlin v. Criswell, supra.

Respondent urges the oft repeated rule as applicable herein that where the findings of the trier of fact are supported by substantial and competent although conflicting evidence, the findings will not be disturbed on appeal, Manley v. MacFarland, 80 Idaho 312, 327 P.2d 758 (1958); Larson v. Lindsay, 80 Idaho 242, 327 P.2d 775 (1958).

The evidence, however, is insufficient to show that the lagoons, if constructed at the place intended, will be located in such a manner, or operated in such a way, as to constitute a nuisance in fact. Nor is the evidence sufficient to show that the lagoons will not be properly maintained or operated; in that regard the record is clear to the effect that sewage disposal plants of the type contemplated by the Village are authorized and operated pursuant to the standards and requirements of the State Board of Health. I.C. § 39–101.

A showing that there is a possibility of injury will not sustain the injunctive relief sought herein. Wergin v. Voss, supra; Annot. 7 A.L.R. 749; Annot. 26 A.L.R. 939; Annot. 55 A.L.R. 882.

The Village in the exercise of its discretionary power, consistent with its legislative grant of power, may locate and construct a sewage treatment and disposal plant. The courts will not interfere with the exercise of such powers by municipal corporations; the exercise thereof is not subject to judicial review, except in a clear case of abuse of power, i. e., where it appears that the municipality and its officials have manifestly acted arbitrarily, capriciously, or in an unreasonable manner so as to create a nuisance in fact. Ordinarily a court will not substitute its own judgment for that of the municipality in which such power is vested. Stone v. City of Wylie, Tex.Com.App., 34 S.W.2d 842, 843 (1931); 62 C.J.S. Municipal Corporations § 199 et seq.

We are constrained to the view that the evidence is insufficient to justify enjoining the Village from constructing the sewage treatment and disposal plant at the intended site. The evidence fails to disclose that the Village has abused its discretion or acted in an unreasonable or arbitrary manner in the premises.

The judgment is reversed. Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.